Good morning. My name is Kevin Kelbel. I represent the appellant, Sharon Hodge. With me is William Hobson. You have to keep your voice up. I'm sorry. The acoustics aren't great. I guess I want to focus on the property interest that Sharon Hodge had in her continued employment at the time of summary judgment, because that seems to be the linchpin of the Are you speaking into the microphone? I'm trying as best I can, Your Honor. I'll get us a little bit closer. In order to understand the property interest, you have to understand the timeline a little bit, some of the significant details. In 1991, Sharon Hodge was hired as a teacher in the Mayer Unified School District, so that by 1994, she was a tenured teacher. In Arizona, a tenured teacher has a property right in that tenure, which cannot be taken away without due process. And that's significant here because there's a case in Arizona called Wolfe v. Sierra Vista that says when a teacher moves to the administrative position and then loses the administrative position, he doesn't lose the tenure she achieved as a teacher. The result when the administrative contract is canceled, you go back to being a teacher. You're not surrendering that property interest to the state by accepting an administrative position. In 1999, she accepted a contract as a principal. It was a two-year contract that ran through 2001. And the other significant statute that is important in this case is ARS Section 15-503 that says if the district doesn't non-renew her by April 15th, then her contract is automatically renewed. So every April 15th, if they had not non-renewed her, her contract got extended for two years. So by the time they get around to non-renewing her in April of 2001, her contract is running through 2003. So when they terminate her effective June 2002, they've deprived her of a year, the balance of the year of that contract. And under the terms of that contract, if they're going to terminate her in the middle of the contract period, she's entitled to due process. That's explicit in the contract. It's also explicit under Arizona's Teacher Tenure Act. The termination of administrator mid-contract entitles the administrator to the same due process that a teacher would be entitled to if they took away her tenure. They didn't do any of that. What did the district court do with respect to the 1983 contract claim? With respect to the contract claim, they said they dismissed the contract claim in summary judgment saying she didn't allege a breach of contract. He applied the one-year statute of limitations under the Arizona Employment Protection Act and said everything more than a year before she filed the complaint was excluded under the statute of limitations and that the acts that she alleged subsequent to that didn't constitute a breach of contract. He said there's nothing in the contract that one of the allegations that was a breach was they didn't give her a 24-hour notice for the executive hearing, the executive session where they were going to discuss her employment. And he said, well, there's nothing in the contract that says that. Well, there wouldn't be because that's a statutory requirement in Arizona. It's the open meeting law, it's 38-4-3103. The contract incorporates – Had alleged and argued to the district court? Yes, it was. It's in the amended complaint and it was in the response to the motion for summary judgment. It was argued at oral argument. I have a question. It's sort of a theory issue for me. The Title VII claim went to trial, and on that, the jury said no to your client. Now my question is, on the appeal of the jury verdict, you're challenging an exclusion of evidence. Assuming that we were to reject that challenge on Title VII, what happens with the other claims, such as the due process claim? Are they all derivative of or related to the sex discrimination claim? Are they independent of it? They are independent. So they rendered – if summary judgment was error, are they moot because of the jury verdict or not? They are not. The breach of contract claim stems from the fact that she was not given a due process hearing before they took off the last year for contract, that they did not give her due process hearing before taking away her teacher tenure rights, that they violated the open meeting law when they had an executive session to discuss her employment without giving her the proper notice. Those are all independent of the Title VII claim. Similarly, the allegations with respect to tortious interference of contract were the public pronouncements that Mr. Nelson made in the paper alleging that she was a bad administrator. But they did have a hearing? There was never a hearing in the front of the board with respect to her termination. It was just an executive session? It was an executive session where they voted to non-renew her. And even though they didn't give her the proper notice, she caught wind of it. And under the statute, she's allowed to request that all the discussions occur in a public session. She requested that, and they still didn't do that. Well, that may be a statute, but that's not necessarily – is this a claim in violation of State law or Federal law? The property – well, the property interest in continued employment arises because the State gives it to her. That State interest is protected under Federal law. But the breach of contract claim was a State law claim, and the State statutes are incorporated into her contract. Therefore, a breach of the State statute is a breach of her contract. You can't – Okay. And the State statute – the State statute required a public hearing? If she requested one. If she requested one. And the way she gets requested is they give her a 24-hour notice that they're going to discuss her in an executive session. She gets requested. They didn't give her that notice. She got wind of the meeting anyway and still requested it, and they still didn't do it in public. They did it in an executive session. So she had no opportunity to know what was going on. She was there or she wasn't there? She could not be there because it was an executive session. Okay. With respect to the 404B evidence, there's a two-step analysis in that. And the first step is, is it 404B evidence? Does it meet the Duran test? And that question is reviewed de novo. And the board's brief does not address that aspect of the analysis. The four-part test is, was there evidence that the jury – the first part is, was there evidence from which the jury could conclude that the defendant, Mr. Nelson, committed other acts of gender discrimination? What Mrs. Hodge wanted to present were four witnesses who were going to testify in personal knowledge to their observation of his discriminatory conduct and their own personal victimhood at his hands. The second part is, are those acts remote in time? And every single one of the acts that was alleged occurred while she was an employee from June, July rather, of 2000, up until the time the complaint was filed. All those acts fell in that time frame. They were not remote in time. The third requirement was materiality, and the judge said these were material facts. And finally, the other acts must be similar in nature. They were all gender discrimination acts. So it meets the four-part test that evidence should not have been excluded. The problem in some respects, granting that motion in limine was dispositive of the Title VII claim because there was no evidence left for her to present on Mr. Nelson's discriminatory intent or animus. That was it. The case was gutted. There was no chance she was going to prevail in Title VII once that evidence was excluded. And even if he could buy that, then the next part of the analysis is, was it an abuse of discretion to keep it out? And he doesn't find there was undue prejudice by letting it in. He admits it's relative. There's no mention of undue prejudice, no undue prejudice analysis in the record at all. He says it's going to result in mini-trials. The problem with that analysis is there's no rebuttal evidence. Mr. Hobson presented what the witnesses were going to say. The Board didn't say what they were going to respond to that with. So if that evidence had gone in, it would have been uncontradicted except for Mr. Nelson saying it didn't happen. That's not, you know, cross-examining witnesses is not mini-trials. Okay. Let me just make sure I understand the gravamen of this whole thing. With respect to the contract claim, the what happened to her in violation of the contract that caused her damage was what? Well, several things. They violated the open meeting law. No, I understand that, but. They terminated her administrative contract a year before it was up without due process, and they took away her teacher tenure rights. Once they, I mean, if they had properly non-renewed her as an administrator, she automatically should have been put back in a teaching position with tenure because she did not give that up. Well, the reason that, as I understand it, that her contract wasn't renewed, there was a reason given for it, wasn't there? Ironically, that's not a requirement of the statute, but the reason that was given was that would be in the best interest of the students in the school. Well, I thought that she was asked to develop an improvement self-evaluation plan, and she didn't do that. She was asked to do that, and the evidence, there's conflicting evidence on that, and she said she did it. And the fact that there's a conflict in the evidence for purposes of summary judgment means she did do it. But the actual notice of intent not to renew does not include any of that. It's one sentence. It's in the best interest of the students in the school. That's the only reason that was given. Okay. On the issue of a self-improvement plan, is there evidence in the record that she said she had tendered such a plan, and where would that be in the record? The record is voluminous. I looked at it last night. That's why we are here. I understand. I know it's in there. I know it's – I know she testified to that. It's in her deposition. It's in the statement of facts that Mr. Hopson filed in response to the motion for summary judgment, and there's an exhibit attached to that. It would be R57. I don't know which exhibit to R57 it is, but there's evidence in the record that she did that. It's her own testimony. But, you know, that's sort of a red herring, because that was not the reason they gave for her non-renewal. The ultimate reason was just very vague. It's just not in the best interest of the students. And if we can now talk about the summary, I guess what Mrs. Hodge is looking for here is just a fair opportunity to The summary judgment process here was very unusual. The board presented summary judgment without any evidence. And under the case law, she didn't have to do anything to defeat that, because they hadn't met their initial burden of production. But she did. Her case is what? Is that they were biased because of her gender or what? She alleged that sex discrimination, that includes gender. And that's what went to the jury? Correct. But with respect to all the other claims that didn't go to the jury, I mean, the district court just relieved the board of its burden under summary judgment to produce evidence, you know, up front of what it was. And it's sort of the same thing you did with respect to the motion in limine. The motion in limine was filed saying when they got to the hearing on that, the judge said, I couldn't tell what your evidence, what you want to keep out, Mr. Hawes. And he said, well, that's because I don't know what it is. I filed it before I knew what the evidence was. I mean, at that moment, that motion should have been denied. How do you grant a motion excluding evidence if the moving party doesn't even identify what the evidence was? And it's the same thing on the summary judgment. They just relieved, he just relieved, the judge just relieved the board of its burden to produce, its burden of production to produce the evidence that was going to support its summary judgment. And the board's response was, well, we don't have to do that. Now it's your burden. And that question I had procedurally was there was a motion to strike evidence that was filed, and that was denied by the Court. And all I saw of the Court on that was a minute order of some type. But there seemed to be no appeal of that denial of the motion to strike. The, well, the notice of appeal includes the final determination of all previous orders of the Court. And the issue in the motion to strike. There's an appeal of the summary judgment earlier, and there's an appeal of the trial rulings, but there's no, does there have to be an appeal of the denial of the motion to strike? No, and the reason is the issue with respect to summary judgment is did they meet their initial burden of production? That's the identical issue in the motion to strike. The motion to strike was they haven't met their initial burden of production. There's no evidence attached. It doesn't meet the requirements of Rule 56. It doesn't meet the district court requirements. It used to be 1.10. I think it's 56.1 now. It puts Mrs. Hodge in an untenable position. Basically, they did what Justice Brennan and Justice White in Celotek said they should not be permitted to do, which is say, Plaintiff doesn't have any evidence, and then put her to the task of putting on her entire case in a pretrial motion. And ultimately what happens is she does do it. And I know exactly what Mr. Hobson did. He took the facts from the complaint, created a statement of facts, and put evidence into support of one of those facts. And I know that's sufficient to survive summary judgment, because previously Judge Carroll had looked at the allegations in the complaint and said, you've stated a prima facie case on all your counts. Well, now you have the exact same set of facts with evidence to support them all. By the time the board comes in with its reply, all they're doing is disputing Hodge's facts. If you read their answering brief, they outline the summary judgment facts that were still in dispute when he ruled, when the judge ruled. It was error to grant summary judgment. I reserve the balance of my time for rebuttal. Thank you. Good morning, Your Honors. May it please the Court. My name is Charles Workin. I represent the Appalese in this case. I'd like to try to help you sort this out, and I would like to begin doing so by clarifying what the term of Ms. Hodge's employment contract actually was. Yes. And, Mr. Workin, if you could, that would be helpful. But if you could also just straighten out to what extent the contract breach claim is severable, independent from the gender. I hope to do that as well. With regard to the term of the contract, it was stipulated by the parties prior to trial in a joint stipulated description of the case, which is in the record as item number 78, that she had a written employment contract with Mayer Unified from July 1, 2000, through June 30, 2002. That's the critical date, June 30, 2002. It is not 2003. There are multiple other places in the record where that same contract termination date or end date can be found. It was stated in paragraph 5030, rather, of defendant's statement of facts on the motion for summary judgment. It was admitted by plaintiff in response to that paragraph of the motions, of the statement of facts supporting the motion. It also is in her EEOC complaint, which she herself signed under penalty of perjury, which is in the record in several places, one of which is in tab 80. She also states in her declaration supporting the response to the motion for summary judgment, which is R57, that the statements that are made in the response to defendant's statement of facts are true. So she's indirectly saying that what defendants have said about the end date of the contract, 2002, is correct. But that is stated more expressly in other places, as I have already outlined. So if we're going to talk about a property interest, we have to be certain what the term or duration of that property interest was. It ended in June of 2002, not 2003. So she did not, she was not terminated early. Her contract simply expired, and there was a decision made by the board pursuant to statute not to renew her contract. And I think it's admitted by appellants in the brief that she did not have a legal right to renewal under the Wallace v. Castle Grand case in the Arizona decision. There is no right of, there is no legal right of continued employment for an administrator. So that should dispose of the argument that there is some property interest in continued employment as an administrator, but there's one very important footnote to drop to that, and that is this argument that she, if terminated as an administrator, was nevertheless still a tenured teacher. The first time we hear that argument in this case is in the reply brief. That was not an argument that was made before. It was not made below. It was not argued in the opening brief. Whether she has that right or not, I don't think we're really here to argue that today, but it wasn't the basis of her claim that she had been denied a property interest in violation of 1983. Yes, Your Honor. But was that claim presented to the district court? That she was still a tenured teacher? No. I don't believe it was, Your Honor. So on those bases, she simply does not have a property interest in continued employment, at least not one that was ever presented to the lower court and decided. And I don't think we ought to be deciding here for the first time today whether, in fact, she has some right to go back and resume teaching. Well, now, if the contract terminated June 30th, 2002. Yes. These executive sessions and the things that went on, that complaining about her performance that she's concerned about, happened the preceding school year? They happened in the just months before that. Was it in the 2001-2002 school year, or was it in the 2000-2001 school year, which is what I thought? It would be in the 01-02 school year, Your Honor. It was April 11 of 2002, because the board needed to make the decision by April 15 and give her notice of that. And by the way, there's some confusion. I was asking not the self-help request for her to do those things. Was that in the previous year? Yeah. That was previous, Your Honor. Yes. Because she had been on leave for some 14 months, I believe. I can be more precise. She took leave in November of 2000. And she had been asked to do the evaluation in June of 2000. And while we're talking about that, there was a ‑‑ she did submit a plan in response to the directive, but the plan was deemed to be unsatisfactory. She was simply talking about her accomplishments instead of talking about the things, the areas in which she needed to make improvement. And where is that in the record, please? If you know. I believe that that is compiled in the summary judgment materials. This precise tab number and exhibit number, I don't have at my fingertips. I think that's fair. Thank you. I have a question, though. Same question I asked your colleague. I want to make sure I understand the relationship between the Title VII issues and the others. Assuming that we go your client's direction on the 404B evidence exclusion issues and sustain the jury trial rejection of the sex discrimination claim, do we still have to reach all of the other claims that were dismissed on summary judgment? It sounded as if, at least Appellant argues, the contract process claims are independent of the sex discrimination claim. I disagree. And I think that the one issue in this case that is dispositive of the entire appeal is the 404B or 403 exclusion of evidence of other acts issue. If you decide, if you affirm the district court, then you don't need to reach anything, any of the other issues. All of her claims, the state law claims, the Section 1983 claims, they are all based upon the alleged sex discrimination. Now, I know that there's been some argument in the briefs about the accuracy of that statement that I just made. They're saying that there's also this hostile environment claim. But that is part and parcel of the sex discrimination claim. It's all the Title VII claim. This is not a case about sexual harassment. It is not about quid pro quo sexual harassment. It's not about a sexually oriented workplace where there's sexual improprieties, misconduct, what have you, going on. It's a question of gender discrimination. Well, this is a very small school district. Yes. They did eventually advertise and hired a man for the job. And I guess what, in terms of what the jury actually decided on the gender discrimination, what was that? The jury decided that there was no discrimination. They answered a series of about a dozen special interrogatories analyzing the issue from multiple directions or angles and answered every one of those questions favorably to the district and Mr. Nelson. And the evidentiary ruling that you say is key went to whether or not those prior episodes should go before the jury? Whether the other acts should be presented to the jury. Now, the basic problem with that evidence of other acts is that the evidence was never specified. You can't even begin to decide whether the Duran test is satisfied without first knowing what the other acts are. And we don't know what they really were. Because what we have is a summary description that there was some, someone was, some other woman was mistreated and some other person filed an EEOC complaint based on sex discrimination. The court asked. Is this Judge Campbell? Judge Campbell. David Campbell specifically directed plaintiffs to exactly detail what the evidence of the other acts would be. And what he got in response to that was basically almost word for word the same as what had been disclosed before that is in the joint pretrial order. Can you direct us to a page where? Where Judge Campbell said that? Yeah. I can indeed. I actually quoted the passages in my brief. And I believe that it comes from the transcript of the argument on October 20, 2004 when the motion in limine is being argued and. This is on page 16 of your brief. R88. Is that what we're talking about? At the. We're actually looking for the language where the court asked that. Plaintiffs counsel state the testimony exactly. And I believe that would be a page that I didn't have flagged. But they are discussing the issue on October 20. The court is unable to resolve the issue. And, you know, in fairness to defense counsel, the disclosures about what these who these witnesses are and what the exhibits were going to be and what the witnesses were going to say was all coming, I understand, somewhat belatedly. So, you know, he filed his motion arguing for the exclusion of this other acts evidence before it had yet been specified. And he shouldn't be criticized for doing that because it never was specified. I was curious. I don't know how significant this would be. But I saw that Mr. Cook, who was an interim superintendent. Yes. I'm remembering this right. And that that was one of the one of one of the other bad acts that was excluded or alleged bad acts. Is that correct? I was just curious. Mr. Cook is a he, not a she. So if there was a sex, as I recall, there was a claim of discrimination and of a disability problem. But I don't know if there was a sex discrimination. I think that Mr. Cook's claim, at least in part, Your Honor, was that he had reported to Mr. Nelson some what he thought was mistreatment of another woman, someone other than Sharon Hodge, and that there was some retaliation against him for doing that. But I'll confess that I'm not very conversant with the details of Mr. Cook's. That could explain it. I was trying to understand how a complaint of Mr. Cook about sex discrimination could be a similar act with reference to Ms. Hodge's situation. I don't think that that his testimony on that particular incident is as on point as perhaps some of the evidence or testimony from the other women who said they were mistreated because they were women. I guess if we're talking about evidence of other acts to show Mr. Nelson's motive or intent, any of these things might go to that. But we need to know more specifically first what evidence is, what testimony is going to be offered. And that's where plaintiff fell short. Your Honor, Judge Schroeder, at page 14 of my brief, I see that I'm quoting from Judge Campbell where he uses the statements, the word exactly, and requesting that plaintiff state exactly what evidence you intend to submit on this issue. And I'm citing the transcript of the record of October 20, which I thought was correct, at pages 34 and 35. Could I ask you a question? I didn't quite get your answer to the claim that she had tenure as a teacher, and that was a property interest supported by Federal law. Now, what is your answer on that point? My answer is that that claim has never been presented before in this case. In the complaint? No. I don't believe that it is. All right. Well, then we'll have to check that. I would trust that that would be the best place to look.  I will ask your counsel. All right. You've indicated that that claim was not presented to the district court or in the opening brief to us. That's correct. And you don't think it's – I guess if it was in the complaint, it would have been before the district court. So your understanding is it wasn't in the complaint and it wasn't argued to the district court. That's right. And it's not argued to you in the opening brief. To my – If those things are true, we have precedence on waiver of contentions or that we don't normally reach. Okay. Now, I'm not sure if I've completed the answer to your question, Judge Gould, about the dependence or independence of these claims. Let me try to sum up. I believe that the decision of the exclusion of other acts of evidence issue would dispose of all issues in this appeal. All of the other claims are dependent upon allegations of sex discrimination. How is that – you're discounting the property claim. No, I'm not. Even the – well, if we're talking about her property claim as a tenured teacher, I put that aside. All right. Well, I'll explain that. That's what you did. Thank you for that clarification. Right. But the property claim that she made, and both of the 1983 claims that she made, were somehow rooted in this allegation of sex discrimination, even sex discrimination that rose to the level of creating a hostile work environment. So we don't need to argue about whether this is a hostile environment case or not. Let's just be clear that it's not the kind of hostile environment involving sexual misconduct, only – and I don't mean to understate it or diminish it – but only sex discrimination, gender discrimination. So – Well, she says in her opening brief that her 1983 claim alleged she was denied equal protection and a property interest in continued employment. And it cites to record at page 22, and I guess that's the complaint, paragraph 75 to 77. I'm looking at page 32 of her brief. 32 is the amended complaint. Yeah. And she cites to which paragraph, Your Honor? 75 to 77. Well, okay. Those are the paragraphs of her count 5, section 1983, property claim. And it's – they're very – they're not specific in referring to her right to continue as a teacher. And let me back up to something that I was going to point out earlier. There's some confusion in this case. And when I was answering your question earlier, Judge Schroeder, about what happened when, the board did not owe her a hearing when it decided not to renew her administrative contract. There's some confusion here, confusing two statutes, 15-1503 and 15-5 – I'm sorry, not 1503, 503 and 539. 539 deals with terminating a certificated teacher, someone who has tenure. The board here was acting to not renew the contract of an administrator under 503. They simply had to make that decision before April 15 and let her know of it by that date, that her contract was not going to be renewed the following June. And they didn't have to afford her a hearing on that. She didn't have a property right in continued employment as an administrator. It's just that simple. So – But they didn't ever give her a hearing on the other question. It didn't. That's the force. And I don't know whether it is or not. But you would agree that there was no hearing on her right to be continued as a tenured teacher? That's right. That's right. Well, that's fine.  I just – it didn't really – as I've reviewed this record and I've – as I didn't try the case, I studied it extensively and read the record from cover to cover. And I don't see where the argument or claim was ever specifically made that she was denied her employment as a tenured teacher so that she could continue on with that. But let's not forget that she was on leave and said that she was unable to teach. Thank you very much, Your Honor. Thank you. I just have a couple of points. You asked about when the improvement plan occurred. And that was in the fall of 2000. And that's important because the terminator in 2002 – and there's a case in Arizona called Securis versus Phoenix Unified High School District that says you can't reach back that far as a cause for termination. The case is when they got to April 15th of 2001 and had not non-renewed her, it's as if they considered that and decided it wasn't grounds for termination. So after April 15th of 2001, if they want to terminate her for cause, they have to find some new misbehavior. And since she never returned to work after November of 2000, there's no for cause determination they can make for ending her contract. Now, with respect to the term of the contract, the stipulated facts prior to trial do say that the written contract has a term that says July 2000 through June of 2002. That's the term written in the contract. That's why that's stipulated. It's a document. That's what it says. That doesn't relieve the district of the operation of law under 15-503 that says it's automatically renewed when they don't non-renew her. And you just said she did not return to work after November of 2000? Correct. She was out of medical leave from the stress of the situation. Are you arguing this is a 10-year property? Do you have a complaint or not? In our ‑‑ in the complaint, it's R22 in the paragraph that were just mentioned. She says she has a ‑‑ Paragraph what? I don't know. It was paragraphs 75 and 76. She has a ‑‑ You say that she was denied the right to be a regular teacher. I will ‑‑ And does she assert that claim specifically? Not specifically. Does she assert it at any place in the record to the district court, either the complaint or any motion? The reason it ‑‑ Leading in the record where she has asserted it. Other than in the complaint where she says she has a property interest in continued employment, that's it. But this is a notice pleading ‑‑ That's a general statement that is entirely consistent with the idea that she was entitled to continue as a supervisor. But that would be incorrect, because there is no continued employment. The only continued ‑‑ the only property interest in continued employment in the state of Arizona is as a 10-year teacher. You don't have it as an administrator. Well, did you argue this at the district court? It's not argued in the district court, because it's not in the motion for summary judgment. There's one sentence in there that says she doesn't have a property interest in continued employment. We didn't ‑‑ it's not responded to, because it's not raised. It just gets thrown out. The baby gets thrown out with the bathwater and summary judgment. Everything just goes out. Okay. It's not in there. In fact, and with respect to here, it is in the opening brief. It's on page 2. It's in the ‑‑ it's an issue statement 2. We cite to Wolf v. Sierra Vista. It's one of the ‑‑ it's the first issue ‑‑ the second issue out of the gate in this appeal. It's disingenuous for them to say she didn't allege it, when that's the only basis for alleging continued employment in Arizona. Well, where did Judge Campbell go wrong in ignoring that claim? Where did you tell him that he's ignored that claim? He didn't rule on that basis. He ruled on the statute of limitations ground on the breach of contract claim. And with respect to Title VII, I mean, with respect to 1983 claims, he decided Mr. Nelson had immunity. So he didn't get to the issue of the property interest. He just threw out all the 1983 claims on that ground. And with respect to the instructions that Judge Campbell gave regarding the 404B evidence, what he said was, what he directed both the parties to do was to list the testimony of the four witnesses from the final pretrial order. Both of the lawyers did that, Mr. Hawes, Mr. Hobson. They both went right to the final pretrial order and listed what was in there, because that was the specific instruction. It wasn't until after the fact that the board had now come around and said, well, that was crystal clear, that instruction. We didn't know it at the time, but it's crystal clear now. And the difficulty with this is they're filing a motion limiting to exclude evidence. They haven't identified the evidence. Even now, they haven't. What do you want now? What we would like is the 404B ruling overturned. We would like the summary judgment overturned. And we would like Mrs. Hodge to have an opportunity to have her claims addressed in the merits. But what do you mean? What goes – what should the district court try? The whole thing should be tried. If you throw out the 404B ruling that – You mean the whole thing. All of her accounts. The summary judgment was error because there were disputed material issues of fact. I'm out of time. Can I finish my answer? Uh-huh. There are disputed issues of material fact in the record. So the summary judgment rulings were wrong. She should be able to go to trial on all those counts as well as the Title VII count because if you – because the 404B ruling was error, and that excluded her from presenting evidence on Mr. Nelson's animus and intent. Thank you. The 404B matter, if the Chief Judge would just indulge me a moment. Sure. There's a general allegation made by her, and then the other side wants to exclude such evidence. The judge asks her to specify the evidence, and then apparently she didn't – she didn't further specify it. So what is the judge supposed to do in the face of that? Well, it should be the burden of the party seeking to – I mean, that's your argument. But if a judge orders a party to specify what evidence do you intend to produce because that's what the judge wants to see to rule on the 404B motion, it's hard for me to see the basis for not responding to the judge. The – it's a little – the four witnesses, you asked about what Mr. Cook's claim was. He had a claim of retaliation for having reported the discrimination against Sharon Hodge. Pease and Rosen were – their testimony was about their – Mr. Nelson discriminated against them. I don't know how much more. Well, did – did Ms. Hodge submit like a declaration or a brief to the judge saying the evidence we are going to present about Mr. Cook is, you know, A, B, C, and D? The evidence we're going to present about this other person is such-and-such. Nothing more than the general description. They were going to testify about Mr. Nelson's gender discrimination and listed the – their own EEOC files in the joint pretrial, which would have included all those allegations. Okay. Thank you. Thank you. The case just argued is submitted for decision. We'll hear the last case in the calendar, which is Adams v. Castro.
judges: Gould, Rawlinson, Covello